Trustees of the LOCAL 7 TILE INDUSTRY WELFARE FUND, Trustees of the LOCAL 7 TILE INDUSTRY ANNUITY FUND, Trustees of the TILE LAYERS LOCAL UNION 52 PENSION FUND, Trustees of the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, and Trustees of the INTERNATIONAL MASONRY INSTITUTE,

        Plaintiffs,

- versus -

TITAN INTERIORS, LLC,

        Defendant.

MEMORANDUM AND ORDER

12-CV-135 (JG)(SMG)

APPEARANCES

  VIRGINIA & AMBINDER
    111 Broadway, 7th Floor
    New York, NY 10006
  By: Michael Bauman, Esq.
    *Attorneys for Plaintiffs*

  ANGELO R. BIANCHI, LLC
    80 Orchard Street
    Bloomfield, NJ 07003
  By: Angelo R. Bianchi, Esq.
    *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

  Plaintiffs are trustees (the "Trustees") of the following employee benefit funds: the Local 7 Tile Industry Welfare Fund, the Local 7 Tile Industry Annuity Fund, the Tile Layers Local Union 52 Pension Fund, and the International Masonry Institute (collectively, the "Funds"). The Trustees have brought an action against a tile contractor, Titan Interiors, LLC

("Titan") under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132(a)(3) & 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect delinquent employer contributions and various other collectively bargained obligations. The Trustees now move for summary judgment in the amount of $258,871.58, consisting of a principal deficiency of $67,304.36, interest of $91,828.61, liquidated damages of $91,828.61, and audit costs of $7,910, plus additional interest and attorney's fees and costs.

For the reasons explained below, plaintiffs' motion is granted.

BACKGROUND

Unless otherwise noted, the following facts are undisputed in the parties' statements submitted pursuant to Local Rule 56.1 and their supporting materials.

A. *The Collective Bargaining Agreement and Audits*

The Trustees are third-party beneficiaries to a collective bargaining agreement ("CBA") between Titan and the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers ("Local 7"). The CBA was signed on January 25, 2007, but retroactively took effect on June 6, 2006. The CBA required Titan to make specified hourly contributions to the Funds, and to permit the Funds to periodically audit its books and records to insure the accuracy and completeness of the contributions. It is undisputed that Titan was a signatory to a CBA that required contributions to the Funds for all tile setting and tile finishing work. *See* Declaration of Thomas W. Lane ("Lane Decl."), Ex. B at 31, 36-39, ECF No. 35-5. Pursuant to the agreement, Titan was obligated to submit remittance reports to the Funds indicating how much covered work

2

was performed by its employees, and to pay, on behalf of those employees, fringe benefit contributions to the Funds according to rate schedules set forth in the CBA.

1.   *The Audit*

In 2013, the Trustees' auditor, Marshall & Moss Payroll Compliance Services, LLC, performed an audit of Titan for the period October 1, 2005 through December 31, 2011 to determine whether it complied with its collectively bargained obligations to make contributions and related payments to the Funds.  Though Titan's CBA retroactively began from June 6, 2006, the audit reviewed employee hours beginning in October 2005 because Titan had hired Local 7 members to work for it at that time.  The February 8, 2013 preliminary payroll audit report revealed that Titan had failed to report hours paid and worked in covered employment corresponding to unpaid contributions to the Funds totaling $2,115,851.59, of which $971,187.28 was the principal deficiency; the remainder was comprised of interest, liquidated damages, and audit costs.  Moss Decl., Ex. A; Second Moss Decl. ¶ 11.[1]

The Trustees shared the preliminary findings of the audit report with Titan on February 8, 2013.  Moss Decl., Ex. A at 1.  In response, Titan produced rebuttal documents evidencing payments made directly to the Funds, as well as payments made to the Funds in other jurisdictions, including Nevada, for covered work.  Second Moss Decl. ¶ 9.  After crediting Titan for these payments, and making adjustments in response to Titan's rebuttal production, the auditor's review showed that Titan owed $179,172.40 resulting from unpaid contributions to the Funds.  This amount was comprised of (1) a principal deficiency of $67,304.36; (2) interest of $91,828.61; (3) liquidated damages of $12,129.43; and (4) audit costs of $7,910.00, plus interest

---

[1] The Trustees submitted two affidavits from Fred Moss, a principle of Marshall & Moss Payroll Compliance Services, LLC.  The first is dated January 14, 2014, ECF No. 35-3 ("Moss Decl.") and the second is dated November 13, 2014, ECF 53-1 ("Second Moss Decl.").

to the Funds[2] through the date the contributions are paid, liquidated damages of 20% of the unpaid contributions, and audit costs. Second Moss Decl. ¶ 11.

Titan notes in its papers that it had no collective bargaining agreement prior to June 6, 2006. However, the audit showed that Titan contributed for more than 3,500 hours worked in covered employment in 2005 and over 23,000 hours in 2006. Second Moss Decl. ¶ 10, Ex. A.

DISCUSSION

A. *Legal Standards*

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quotations omitted).

B. *The Audit Report*

As discussed above, the Funds' auditor reviewed Titan's books and records in order to determine the contributions that the employers failed to pay to the Funds for the period October 1, 2005 through December 31, 2011. *See generally* Second Moss Decl. ¶¶ 3-11. The auditor's declarations are sufficient to establish the contributions and related damages owed by

---

[2] The auditor calculated 10% interest to the Local 7 Tile Industry Welfare and Annuity Funds, and the Tile Layers Local Union 52 Pension Fund, and 15% interest to the Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute. Second Moss Decl. ¶¶ 3, 11.

Titan, and absent any evidence from Titan raising genuine issues of fact as to the accuracy of the amounts or the work performed by those included in the audit, the Funds are entitled to judgment based on the audit. *See Durso v. Cappy's Food Emporium, Ltd.*, No. 05-CV-3498, 2006 WL 3725546, at *2 (E.D.N.Y. Dec. 14, 2006) (granting summary judgment to benefit funds where funds submitted audit reports based on review of employer's books and records and employer failed to raise substantive issues as to accuracy of audit reports); *Trs. of the Local 807 Labor-Mgmt. Health & Pension Funds v. River Trucking and Rigging*, No. 03-CV-3659 (JMA), 2005 WL 2290579, at *2-6 (E.D.N.Y. Sept. 20, 2005) (awarding summary judgment where conclusory allegations in defendant's affidavits failed to raise a genuine issue of material fact concerning accuracy of Funds' audit); *see also Gesualdi v. RRZ Trucking Co., LLC*, No. 03-CV-3449 (ETB), 2011 WL 1988374, at *4-5 (E.D.N.Y. May 20, 2011) (awarding post-inquest judgment to benefit funds based on audit report in combination with auditor's testimony and declaration where employer failed to submit specific evidence showing inaccuracy of the audit).

    C.    *Employer Contributions Prior to June 6, 2006*

Titan argues that it only owes contributions beginning in June 6, 2006 because it signed a collective bargaining agreement on January 25, 2007, which retroactively took effect on June 6, 2006. *See* Lane Decl., Ex. B at 31-32.

In opposition, the Trustees claim that Titan's contributions to the benefit funds beginning in October 2005 indicate an intent to be bound to the CBA at that time. A collective bargaining agreement need not be signed so long as the parties agree to its substantive terms. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 355-56 (2d Cir. 1999). To ascertain the parties' intent, the Court should examine the surrounding circumstances and the conduct of the parties. *See id.*; *Baskin v. Hawley*, 807 F.2d 1120, 1128-29 (2d Cir. 1986). "Among the factors courts

examine in determining whether employers have adopted the terms of a collective bargaining agreement through their conduct are whether wages were paid as required by the current collective bargaining agreement, the submission of remittance reports for fringe benefits, the existence of other documents evidencing assent, and whether the employer has submitted to an audit in the past." *See Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers, AFL-CIO*, No. 05-CV-259 (MDG), 2008 WL 312096, at *7 (E.D.N.Y. Feb. 1, 2008) (citing cases).

The Trustees have submitted evidence that Titan contributed to the Funds for more than 3,500 hours worked in covered employment in 2005 and over 23,000 hours in 2006, thus showing an intent to be bound by the CBA. *See* Second Moss Decl. ¶ 10, Ex. A (spreadsheet recording Titan contributions). The owner of Titan admitted in his deposition that several of the employees listed on the spreadsheet were union employees doing covered work. *See* Declaration of Michael Bauman, Ex. A, Tr. 21-26;[3] Second Moss Decl., Ex. A. Titan has not denied that it made these payment contributions for these hours worked. I find this sufficient to show that Titan intended to be bound by the 2007 CBA beginning in October 2005. *See Trs. of Local 1034 I.B.T. Ins. Trust Fund v. Menna Container & Drum, Inc.*, No. 08-CV-1234 (SJ)(SMG), 2010 WL 890981, at *3 (E.D.N.Y. Mar. 9, 2010).

D.    *Payments Pursuant to a Reciprocity Agreement with Nevada Local 13*

Titan also argues that a genuine issue of material fact remains because its records "may demonstrate that Nevada Local 13 made the benefit contributions payments for individuals included in the audit during 2006." Def. Reply at 2.[4] However, the Trustees put forward an

---

[3] ECF No. 35-4.
[4] In response to my December 8, 2014 Order, Titan submitted a letter on December 11, 2014, ECF No. 54 ("Def. Reply"). After oral argument, I directed the parties to file supplemental submissions regarding the pre-June 6, 2006 payments. The Trustees subsequently filed a letter on January 28, 2015, ECF No. 55, and Titan

6

affidavit from their auditor stating that he had considered all of the rebuttal documents that Titan had produced, including those showing payments in Nevada, and had adjusted the calculation accordingly. *See* Second Moss Decl. ¶¶ 8-9, 11. Indeed, as discussed above, the audit lowered its initial figure by nearly two million dollars after taking into account Titan's rebuttal documents. *Id*. The auditor has stated that all payments to the Nevada Local 13 have been credited. Titan's assertion that documentation it intends to present "may" reveal further discrepancies fails to raise a genuine issue of fact requiring trial. *See* Def. Opp. at 5, 9; Def. Reply at 2. Notably, Titan has made no application under Fed. R. Civ. P. 56(d) to defer ruling on the motion or allow it additional time to take discovery.[5]

   E.   *Titan's Other Objections*

In its opposition, Titan makes reference to myriad rebuttal records. But in the time since the opposition was filed, all of the rebuttal documents produced have been analyzed, resulting in the reduced audit findings referenced above. In addition, Titan references spreadsheets that list names of individuals it believes were improperly included in the audit as they were not members of the unions covered by the Funds. *See* Def. Reply at 1; Def. Opp. at 2. However, pursuant to the CBA, inclusion in the audit is not based on union membership, but rather whether the employee was performing covered work. *See* Pl. Rule 56.1 Stmt. ¶¶ 13-14; Def.'s Resp. to Rule 56.1 Stmt ¶¶ 13-14. To the extent Titan raises other objections regarding the audit's accuracy, such allegations are unsupported by any affidavit and amount to mere speculation. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving

---

followed with a letter on February 4, 2015, ECF No. 56. I have considered all of these submissions in addition to the parties' briefs.
   [5]   Fed. R. Civ. P. 56(d) states, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment) (quotations omitted).

F.  *Liquidated Damages under Section 502(g)(2)*

Under section 502(g)(2) of ERISA, the Trustees are entitled to judgment against Titan not only for the delinquent contributions, but also for (1) interest on the unpaid contributions at "the rate provided under the plan"; (2) "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan;" and (3) "reasonable attorney's fees and costs of the action." *See* 29 U.S.C. § 1132(g)(2); *LaBarbera v. Golden Vale Constr. Grp.*, No. 06-CV-0813 (FB)(CLP), 2007 WL 2071565, at *3-6 (E.D.N.Y. July 17, 2007). The CBA authorizes the Trustees to assess liquidated damages of 20% and annual interest of 10% on unpaid contributions. Pl. Rule 56.1 Stmt. ¶ 12; Def.'s Resp. to Rule 56.1 Stmt ¶ 12. The Collection Procedures mandate interest on unpaid contributions to the International Benefit Funds at the annual rate of 15%. Moss Decl. ¶ 6. Interest on the delinquent contributions has already exceeded the liquidated damages amount of 20% of the amount of the contributions. Specifically, the interest through October 2014 totals $91,828.61, while the liquidated damages total $12,129.43. Second Moss Decl. ¶ 11. Therefore, pursuant to Section 502(g)(2)(C), the Trustees are entitled to double interest on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2). In addition, under the CBA, Titan is liable for the cost of the audits, which is $7,910.00. *See* Second Moss Decl. ¶ 11; *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted. The Trustees request the opportunity to submit an application for interest and additional interest accrued from the end of the audit to the date of judgment and for reasonable attorney's fees and costs pursuant to ERISA Section 502(g)(2)(d) should the Court grant plaintiffs' motion. That request is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 24, 2015
      Brooklyn, New York